IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| WILLIAM DEANS,<br><br>      Plaintiff,<br><br>vs.<br><br>SHEILA LINDSEY, IN OFFICIAL AND<br>PRIVATE CAPACITY; AND<br>SCDMH BEHAVIORAL DISORDERS<br>TREATMENT PROGRAM, FOR<br>DECLARATORY AND INJUNCTIVE<br>RELIEF,<br><br>      Defendants. | ) Civil Action No. 3:07-3247-CMC-JRM<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **REPORT AND RECOMMENDATION**<br>)<br>) |

Plaintiff, William Deans, filed this action under 42 U.S.C. § 1983 on September 26, 2007.[1] He is involuntarily committed to the Sexually Violent Predator Treatment Program ("SVPTP")[2] at the South Carolina Department of Mental Health ("SCDMH") as a Sexually Violent Predator ("SVP") pursuant to the South Carolina SVP Act, S.C. Code Ann. § 44-48-10 et seq. Defendants are the SCDMH and SCDMH employee Sheila Lindsay ("Lindsay").[3] On March 19, 2008, Defendants filed a motion for summary judgment. Plaintiff, because he is proceeding pro se, was advised on March 21, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on April

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(e), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

[2] This was formerly known as the Behavioral Disorders Treatment Program or BDTP.

[3] Lindsay states that she began working with the SVPTP as the Resident Advisor/Grievance Coordinator in May 2007. Lindsay Aff., Para. 1.

18, 2008. On June 10, 2008, the undersigned granted Plaintiff's April 30 and May 22, 2008 motions to supplement his response. Defendants filed a reply on July 9, 2008.

DISCUSSION

Plaintiff alleges that he was denied access to the courts. He also appears to allege that his equal protection rights were violated. Plaintiff seeks monetary damages as well as declarative and injunctive relief. Defendants contend that their motion for summary judgment should be granted because: (1) Plaintiff has not shown that he was denied access to the courts, (2) Defendants are entitled to Eleventh Amendment immunity, (3) Defendant Lindsey is entitled to qualified immunity, and (4) Plaintiff has presented no evidence in support of his claim for injunctive relief.

1.     Access to the Courts

Plaintiff alleges that Defendants denied him access to the courts by refusing to allow him to make "legal" calls, refusing to allow him to be physically present in the copy room when copies of his "legal" documents are made,[4] and refusing to provide him with notary services. Defendants contend that Plaintiff fails to show that he has been denied access to the courts because he has shown no relevant actual injury; the record clearly demonstrates Plaintiff's ability to draft, serve, and file a variety of legal documents; and the record shows that Plaintiff had ample access to copying services, notary services, and a telephone for the purposes of making legal phone calls.

In <u>Bounds v. Smith</u>, 430 U.S. 817 (1977), the United States Supreme Court determined that prisoners have an absolute right to access to the courts, both to allow them to attack their convictions and to file other lawsuits. The decision merely requires that the <u>right of access to the courts</u> not be

---

[4]Plaintiff has presented no authority to support his argument that a SVPTP resident is entitled to be in the room when photocopies of his legal documents are made.

2

impeded. The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343 (1996). In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996); see also White v. White, 886 F.2d 721, 723-24 (4th Cir. 1989); Strickler v. Waters, 989 F.2d 1375, 1382-85 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993). A plaintiff must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim. Lewis, 518 U.S. at 353-54.

Although Plaintiff is civilly committed and not a prisoner, an individual whose liberty is constrained against his will has a constitutional right of access to the courts to challenge the facts or conditions of his confinement. His circumstances are similar enough to that of a criminal defendant or pretrial detainee to warrant analysis under Bounds and Casey, as discussed above. See Cornett v. Donovan, 51 F.3d 894, 898 (9th Cir. 1995)((The "right of access [to the courts] is guaranteed to people institutionalized in a state mental hospital regardless of whether they are civilly committed after criminal proceedings or civilly committed on grounds of dangerousness").

Plaintiff fails to show that his access to the courts has been violated as he has not shown any actual injury resulting from Defendants' alleged actions. See Bounds v. Smith and Lewis v. Casey, supra. Plaintiff appears to assert that he has shown injury because some of his legal documents for a pending state court case (2006CP4007599) were stolen by Defendants and not placed in the mail. He, however, fails to show that this caused any actual injury such as the late filing of the document

3

or the dismissal of an otherwise meritorious claim.  Plaintiff appears to argue that he has shown injury because he has been civilly committed longer than necessary as he was unable to communicate his defenses and evidence to his attorney in a timely manner.  He claims that this resulted in some of his defenses not being brought up at his hearing.  This alleged injury, however, is purely speculative on Plaintiff's part.  He has presented nothing to support his theory that the outcome would have been different if he was allowed additional or earlier phone calls.

Plaintiff also appears to allege that Lindsey retaliated against him by refusing to place a "legal" phone call on August 15, 2007, after he talked about filing a lawsuit. Defendants contend that this allegation is speculative and Plaintiff offers no evidence to support his claim.

Bare assertions of retaliation do not establish a claim of constitutional dimensions.  See Adams v. Rice, 40 F.3d 72 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995).  In order to state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. Id. at 75.  "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition "retaliatory" in the sense that it responds to prisoner misconduct.'"  Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996)(en banc), citing, Adams, 40 F.3d at 74.

Lindsay states that when a resident of the SVPTP desires to make a telephone call of a legal nature, the resident has to complete a request form.  SVPTP residents are permitted to make telephone calls of a legal nature during business hours and at other times with approval, but the calls may not interfere with or cause disruption of the regular operation of the SVPTP.  She states that the use of the telephone by residents of the SVPTP is not unlimited and they may not dictate the specific time at which to place or receive calls.  Lindsay Aff., Para. 4.  Defendants have provided

4

copies of Plaintiff's requests to staff members dated August 16 and 17, 2007. It is noted that Plaintiff withdrew his August 16 request and his legal phone call was placed on August 17, 2007. There is no indication that Plaintiff submitted a request to staff member for a legal phone call on August 15, 2007.

    2.    <u>Equal Protection</u>

Plaintiff appears to allege that his equal protection rights were violated because other SVPTP residents were provided access to the courts, but he was not. Lindsey denies treating Plaintiff differently from any other similarly-situated SVPTP resident with regard to obtaining copies of legal documents, obtaining notary services, or using a telephone for calls of a legal nature. Lindsey Aff., Para. 6.

An equal protection claim arises when, without adequate justification, similarly-situated persons are treated differently by a governmental entity. U.S. Const. amend XIV. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." <u>Morrison v. Garraghty</u>, 239 F.3d 648, (4th Cir. 2001). When the distinction is based on a "suspect classification" or effects the denial of a fundamental right, the constitutional scrutiny sharpens in focus to determine whether the classification is narrowly tailored to serve a compelling governmental interest." <u>See</u> <u>Plyler v. Doe</u>, 457 U.S. 202, 216-17 (1982). When a plaintiff is not a member of a suspect class he must prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose. <u>See</u> <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987). Here, Plaintiff, has not asserted that he is a member of a

suspect class and has not shown that similarly-situated persons are treated differently.[5] Plaintiff complains that other SVPTP residents were treated better than him, but fails to provide sufficient details to show that they were similarly situated to him.

    3.    <u>Immunity</u>

Defendant SCDMH contends that it is entitled to Eleventh Amendment immunity and Defendant Lindsay contends that she is entitled to Eleventh Amendment immunity in her official capacity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may

---

[5]Plaintiff has submitted an affidavit from SVPTP resident Rufus Belding in which Belding states that he was refused notary services for a certain document, but another SVPTP resident was able to get a similar document notarized. Defendants provide that Belding later had his document notarized. Plaintiff also submitted a copy of an affidavit from SVPTP resident Leo McClam who complains about the disappearance and interference with some of his (McClam's) mail. Additionally, Plaintiff submitted an affidavit from SVPTP resident James Smith. Smith complains that he had to wait a few days to mail something on one occasion because he did not have enough money in his account and he received a piece of legal mail that appeared to have been inspected outside of his presence. To the extent that Plaintiff is attempting to assert claims on behalf of other SVPTP residents, his claims fail. <u>See</u> <u>Laird</u> v. <u>Tatum</u>, 408 U.S. 1 (1972). <u>See</u> also <u>Valley Forge Christian College v. Americans United for Separation of Church & State</u>, 454 U.S. 464, 482 (1982); <u>Flast</u> v. <u>Cohen</u>, 392 U.S. 83, 99 (1968)(a district court, when determining whether a plaintiff has standing to sue, must focus on the status of the party who has filed the complaint, such that the merits of the case are irrelevant); <u>Lake Carriers Ass'n v. MacMullan</u>, 406 U.S. 498, 506 (1972); and <u>Hummer v. Dalton</u>, 657 F.2d 621, 625-626 (4th Cir. 1981 )(a prisoner cannot act as a "knight-errant" for others). <u>Cf.</u> <u>Oxendine v. Williams</u>, 509 F.2d 1405, 1407 & n. *(4th Cir. 1975)(a <u>pro</u> <u>se</u> prisoner cannot be an advocate for others in a class action); and <u>McNeil v. Guthrie</u>, 945 F.2d 1163, 1164 & nn. 1-2 (10th Cir. 1991).

    Plaintiff also submitted an affidavit from SVPTP resident (now deceased) Kris Kollyns stating that in July 2006 he overheard Mr. Pauer state that Plaintiff could not get any legal copies made by the SCDMH by order of Dr. Watson. Mr. Pauer and Dr. Watson are not defendants in this action and this alleged incident occurred prior to Lindsey beginning work at the SVPTP (in May 2007).

be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendant SCDMH is entitled to Eleventh Amendment immunity and Defendant Lindsey is entitled to Eleventh Amendment immunity from monetary damages in her official capacity.

Defendant Lindsey contends that she is entitled to qualified immunity in her individual capacity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendant Lindsey violated any of his clearly established constitutional or statutory rights. Therefore, Defendant Lindsey is entitled to qualified immunity in her individual capacity.

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 27) be granted.

Respectfully submitted,



Joseph R. McCrorey
United States Magistrate Judge

December 12, 2008
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice**.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).